IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAGDA SHARIFEH, | |
| Movant, | Case No. 11 C 8811 |
| | Related to: 09 BK 05868, |
| v. | 09-AP-00770, 10-AP-02239 |
| HORACE FOX, JR., | |
| Defendant. | |
| RICHARD SHARIF, | |
| Appellant, | Case Nos. 10 C 5303, |
| | 10 C 5333, 10 C 6057, |
| v. | 11 C 175 |
| WELLNESS INTERNATIONAL NETWORK LTD., RALPH OATS and CATHY OATS, | Hon. Harry D. Leinenweber |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

This case concerns four appeals stemming from a bankruptcy filing by Richard Sharif ("Sharif") and an adversary proceeding filed by his creditor, Wellness International Network, Ltd. ("Wellness"). After Sharif failed to respond to certain discovery requests, the Bankruptcy Court refused to discharge Sharif's debt to Wellness, entered a default against him in the adversary proceeding, and ordered him to pay certain fines and fees. Pending before the Court are Sharif's appeal of those rulings, as well as his sister Ragda Sharifeh's efforts to withdraw the reference to

the Bankruptcy Court. Because all the appeals raise the same issues, the Court will decide them jointly. For the reasons stated, the motion to withdraw the reference is denied, and this Court affirms the Bankruptcy Court's rulings in their entirety.

## I. <u>BACKGROUND</u>

This case has its roots in a dispute litigated in the United States District Court for the Northern District of Texas. In 2005, Appellant Richard Sharif (hereinafter, "Sharif") and others brought suit against Wellness International Network, Ltd. and Ralph and Cathy Oats (collectively, "Wellness"), alleging fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RIC0"). When Sharif failed to participate in discovery, the district court granted summary judgment to Wellness, a ruling that was affirmed by the Fifth Circuit Court of Appeals. In a brief ruling, the appeals court found:

> A review of the record on appeal demonstrates that Appellants' untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of non-performance or insubstantial performance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation. . . .

*Sharif v. Wellness Int'l Network, Ltd.*, 273 Fed. App'x 316, 317 (5th Cir. 2008). On remand, the district court ordered Sharif to pay Wellness $655,596 in attorney fees. *See Sharif v. Wellness Int'l Network, Ltd.*, No 3:05-CV-01367-B, 2008 WL 5220526 (S.D. Tex.

Dec. 12, 2008). Wellness attempted to collect those fees, in part by serving Sharif with discovery requests seeking information related to his assets. Sharif refused to respond to discovery and failed to appear for his deposition. He was held in contempt, arrested, and subsequently released on his own recognizance with a promise to respond to the post-judgment discovery. Sharif never responded, and filed for bankruptcy in the Northern District of Illinois.

## A. The Bankruptcy Proceeding

Sharif's bankruptcy petition listed Wellness as a creditor, and Wellness filed a proof of claim. Wellness then obtained, through it own efforts, a loan application Sharif had submitted to Washington Mutual Bank, dated June 14, 2002, in which he admitted that he owned: (1) three businesses valued at $2.4 million; (2) three pieces of property valued at $1.4 million; (3) a retirement account valued at $1.4 million; and (4) three bank accounts with $180,000 in cash (the "Loan Application Assets"). Washington Mutual approved the loan based on these representations. Sharif never produced documents relating to these assets in the Texas litigation.

On March 25, 2009, the parties held the initial Section 341 creditors' meeting. Wellness requested that Sharif provide documentation related to the Loan Application Assets, and the meeting was continued until April 21, 2009, to allow him to do so.

At that time, Sharif failed to provide any documents related to those assets. Instead, he said he had lied on the loan application, and he did not own any of the assets. Rather, he said, they were owned by the Soad Wattar Living Trust, of which he claimed to be the trustee. (Soad Wattar, now deceased, was Sharif's mother.) Wellness requested that Sharif produce documents evidencing the formation and funding of the trust. The creditors' meeting was continued until June 3, 2009. Sharif failed to provide the requested documents and unsuccessfully sought a protective order requesting that he not have to turn over that information.

On October 20, 2009, due to Sharif's failure to produce the requested documents, the Bankruptcy Trustee filed a Motion for Turnover of the property of the estate, which the Bankruptcy Court granted pursuant to 11 U.S.C. §§ 521(3) and 542(a). Among other things, the Bankruptcy Court ordered Sharif to turn over documentation related to the trust. Sharif failed to comply with this order.

## B. The Adversary Proceeding

On August 24, 2009, after Sharif failed to provide documents related to the Soad Wattar Trust, Wellness filed an adversary proceeding against Sharif, individually and as trustee of the trust. The Adversary Complaint objected to the discharge of Sharif's debt pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4) and (5). Essentially, the Complaint accused Sharif of hiding assets, and

- 4 -

sought a declaratory judgment that the Soad Wattar Trust was Sharif's alter ego.

Sharif was to respond to Wellness's discovery requests by March 15, 2010, and his deposition was noticed for March 24, 2010. On March 12, 2010, almost a month after being served with discovery, Sharif's counsel requested an extension of time to complete discovery. Sharif's counsel said he believed Sharif had traveled to Syria.

On March 24, 2010, Sharif filed a motion to postpone his deposition and delay his discovery responses. Sharif did not appear at his deposition. On April 7, 2010, the Bankruptcy Court denied that motion. On April 13, Wellness's counsel conferred with Sharif's counsel to resolve the dispute over the discovery responses. Wellness wanted Sharif to respond to the discovery requests by April 23, 2010, but Sharif's counsel could not agree to that because he did not know when Sharif would return to this country.

Wellness responded by filing a Motion to Compel, which was granted by the Bankruptcy Court on April 21, 2010. The Bankruptcy Court ordered Sharif to respond to all outstanding discovery requests by April 28, 2010. The Bankruptcy Court warned that if he did not do so, an Order of Default would be entered against him. On April 27, 2010, Sharif produced about 1,500 pages of discovery. On May 13, 2010, Sharif sat for his deposition. Unsatisfied with

his answers, Wellness supplemented its Motion to compel with his deposition testimony. At a hearing on May 24, 2010, counsel for Wellness identified several categories of documents that Sharif had failed to produce, including: (1) documents related to the Richard Sharif Trust, which was listed on his Bankruptcy Petition; (2) documents relating to accounts at A.G. Edwards in Sharif's name; (3) documents relating to certain bank accounts at Banco Popular, J.P. Morgan Chase, and Wells Fargo that Sharif owned or to which he had access; (4) documents related to the formation and founding of the Soad Wattar Trust; and (5) documents showing the disposition of the Loan Application Assets. Following a lengthy recitation of these various deficiencies by counsel for Wellness, Sharif's counsel said that Sharif had made a good faith effort to comply with the discovery requests. He said that Sharif was unable to meet the deadlines because he was in Syria with his dying mother, and produced proof of the Syria trip. Sharif's counsel objected that counsel for Wellness had not consulted with him before supplementing its motion to compel and moving for default. Sharif did not attend this hearing.

After the evidentiary hearing, the Bankruptcy Court issued a ruling granting Wellness's motion to compel on July 6, 2010. The Bankruptcy Court found that Sharif was prohibited from opposing Wellness' claims in the adversary proceeding, struck his answer to the adversary complaint, and entered a default judgment in favor of

Wellness.  The Court also denied Sharif a discharge pursuant to 11 U.S.C. § 727(a)(2)-(a)(6).  This order was entered both in the adversary proceeding and the bankruptcy proceeding.

In its ruling, the Bankruptcy Court outlined various failings by Sharif in connection with his discovery obligations, including his failure to sign or verify certain discovery responses and his continuous failure to provide documents requested by Wellness and the bankruptcy trustee.  The Bankruptcy Court then outlined several categories in which Sharif was deficient.  Specifically, Sharif failed to produce:  (1) documents related to the Washington Mutual Loan Application and the assets listed therein; (2) documents related to the Richard Sharif Revocable Trust that he listed in his sworn bankruptcy schedule; (3) certain bank statements and financial records; (4) records showing the disposition of certain assets in which he once claimed an interest; (5) records showing the formation and funding of the Soad Wattar Trust; (6) signed tax returns; and (7) documents evidencing alleged debts to family members.

The Bankruptcy Court found that Sharif had not made a "serious effort" to comply with the discovery requests either before or after his mother's death.  The Bankruptcy Court further found that counsel for Wellness had met its obligation under Local Rule 37.2 to consult with counsel for Sharif before filing the initial motion to compel.  The court noted that while Sharif's counsel asserted

that additional documents had been turned over following the deposition, those documents were still produced after the April 28, 2010 deadline. Nor did counsel for Sharif explain what the documents contained, why they were not produced sooner, or whether they were responsive to Wellness' requests.

The Bankruptcy Court concluded by noting, "This court has stated time and time again that Bankruptcy Courts provide extraordinary relief that requires extraordinary cooperation." Because Sharif had failed to comply with most of Wellness' discovery requests, and because the lack of compliance was part of a pattern dating back to the underlying litigation in Texas, the court granted the motion to compel.

Subsequently, on August 9, 2010, the Bankruptcy Court awarded attorneys' fees and costs to Wellness in connection with the motion for sanctions in the amount of $54,405.99, and $8,349.75, respectively. On November 18, 2010, the Court entered an order granting Wellness fees and costs in connection with the 341 creditors' meeting.

Sharif appealed all of these orders. Initially, three of the appeals were pending before Judge James B. Zagel, but this Court granted the parties' joint motion to consolidate all the appeals before this Court, which had been assigned the appeal with the lowest case number.

Sharif argues: (1) that he was deprived of due process when Wellness failed to confer with his counsel about obtaining discovery, or to otherwise specify any particular deficiency prior to the hearing on the sanctions; and (2) that the Bankruptcy Court abused its discretion in declaring a default, denying discharge, and finding that the Soad Wattar Trust was the property of the bankruptcy estate.

### C. Ragda Sharifeh's Involvement

Before the Court can decide these appeals, however, it must deal with a separate challenge from Sharif's sister, Ragda Sharifeh ("Sharifeh"). Sharifeh contends that she is the beneficiary of the Soad Wattar Trust. After learning that the Bankruptcy Court had found the Trust to be the alter ego of her brother, she filed suit in Cook County Circuit Court and an adversary proceeding in the Bankruptcy Court. Her adversary Complaint alleged that the Bankruptcy Trustee, Horace Fox. Jr., had wrongfully converted the assets of the Soad Wattar Trust and sought a declaration that she was the beneficiary of the trust. The Bankruptcy Court subsequently dismissed this Complaint on numerous grounds, including that her claims were barred because of the Court's previous order defaulting Sharif on Wellness's adversary complaint. In that order, the Bankruptcy Court noted that Sharifeh had given deposition testimony to the effect that Sharif had been her agent in conducting the Texas litigation. She also testified that she

knew Sharif had claimed to own the Loan Application Assets, and that she told him to make that claim in order to secure a loan for her mother.

Sharifeh is appealing the ruling dismissing her adversary complaint, and her appeal is pending before Judge John F. Grady in Case No. 11 C 7374. In the meantime, she also has filed a Motion to Withdraw the Reference that has been assigned to this Court. In that Motion, she asks this Court to find that under *Stern v. Marshall*, 131 S.Ct. 2594 (2011), the Bankruptcy Court did not have jurisdiction to enter final judgments either in Wellness' adversary proceeding, 09-AP-770, or her own, 10-AP-2239.

## II. <u>MOTION TO WITHDRAW REFERENCE</u>

As a preliminary point, the Court notes that Sharifeh was not a party to the Wellness adversary proceeding, and does not explain how she has standing to seek the withdrawal of a reference in a proceeding to which she was not a party. That aside, her Motion to Withdraw the References, after final orders have been issued, is untimely and unmeritorious.

### A. Legal Standard

Bankruptcy cases are automatically referred to bankruptcy judges for the same federal district pursuant to 28 U.S.C. § 157(a). *Southern Elec. Coil, LLC v. FirstMerit Bank, N.A.*, No. 11 C 6135, 2011 WL 6318963, at *2 (N.D. Ill. Dec. 16, 2011)(citing *In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 951 (7th

Cir. 1996)).  A bankruptcy court may hear "core" proceedings and enter final judgment pursuant 28 U.S.C. § 157(b)(1)-(2).  *Southern Elec. Coil,* 2011 WL 6318963, at *2.  By contrast, a bankruptcy court may hear non-core proceedings that are "otherwise related to a case under Title 11," but may only submit proposed findings of facts and conclusions of law to the district court.  *Id.*; see 28 U.S.C. § 157(c)(1).  The district court then reviews *de novo* those findings to which a party objects, and enters a final judgment. *Id.*

Among the core proceedings that a bankruptcy judge may determine are proceedings to "determine, avoid, or recover fraudulent conveyances."  28 U.S.C. § 157 (b)(2)(H).  Although not styled as such in Wellness' Adversary Complaint, Sharifeh argues that this is the type of adversary claim that Wellness brought against Sharif.

Sharifeh contends that in *Stern*, the U.S. Supreme Court cast severe doubt on the continuing ability of Bankruptcy Courts to rule on this type of claim.  She contends that in light of *Stern*, the Bankruptcy Court did not have the authority to enter final orders in either adversary proceeding.  As such, she moves to withdraw the reference in both adversary proceedings pursuant to 28 U.S.C. § 157(d), which allows a district court to withdraw, in whole or in part, any case referred to the bankruptcy court "on timely motion of a party, for cause shown."

## B.  Analysis

In *Stern*, a case involving the marital exploits of the late Anna Nicole Smith ("Anna Nicole"), her stepson E. Pierce Marshall ("Pierce") filed a defamation claim and proof of claim in Anna Nicole's bankruptcy proceeding.  *Stern*, 131 S.Ct. at 2601.  He alleged that Anna Nicole defamed him by falsely accusing him of fraudulently gaining control of his late father's assets and preventing his father from leaving property to Anna Nicole, his much younger wife.  *Id.*

Anna Nicole responded by filing a counterclaim for tortious interference with the gift she expected to receive from her husband.  *Id.*  Counterclaims by the bankruptcy estate against people filing claims against it were also considered core proceedings by statute, *see* 28 U.S.C. § 157(b)(2)(c), but the Supreme Court nonetheless found that this type of claim was a state law action independent of the federal bankruptcy laws that could only be heard by Article III judges.  *Stern*, 131 S.Ct. at 2610-11.

In the wake of *Stern*, some courts have questioned whether bankruptcy courts constitutionally may rule upon fraudulent conveyance claims.  *See In re Canopy Fin., Inc.*, No. 11 C 5360, 2011 WL 3911082, at *3 (N.D. Ill. Sept. 1, 2011)(finding that *Stern* made it clear that bankruptcy courts lack authority to enter final judgment on fraudulent conveyance claims); *In re The Mortgage Store, Inc.*, No. 11-00439 JMS/RLP, 2011 WL 5056990, at *3-4

(recounting split in case law over whether bankruptcy courts may still enter final judgment on such claims).

While interesting, the Court need not enter this fray. Sharifeh gives no explanation as to her failure to raise a *Stern* objection prior to this late date, when both her appeal and that of her brother are pending. Nor did Sharif himself at any time raise this issue. Although *Stern* was decided after the final orders were issued in Sharif's case, it predated by two months the Bankruptcy Court's ruling dismissing Sharifeh's own adversary complaint.

Sharifeh treats her objection as one of subject matter jurisdiction, which can be raised at any time. However, that was not the basis for the ruling in *Stern*. *See In re U.S.Digital*, ---B.R. ---, 2011 WL 6382551, at *1 (Bankr. Del. Dec. 20, 2011)("*Stern* in no way limits the bounds of a bankruptcy court's subject matter jurisdiction."); *see also Stern*, 131 S.Ct. at 2607 (noting that the statute at issue, 28 U.S.C. § 157, allocates authority between the district court and bankruptcy court, but that allocation "does not implicate questions of subject matter jurisdiction.").

Indeed, *Stern* itself contains language indicating that objections based on a bankruptcy court's authority to enter a final judgment are waivable. As an alternative argument, Pierce contended that the bankruptcy court did not have jurisdiction to enter judgment on his defamation claim because it was a personal injury case that, by statute, had to be tried in the district

- 13 -

court.  *Stern*, 131 S.Ct. at 2606; *see* 28 U.S.C. § 157(b)(5).

Rejecting that argument, the high court noted that the stepson had

consented to the bankruptcy court's resolution of his defamation

claim for more than two years, waiving any objection on that basis.

*Stern*, 131 S.Ct. at 2606-07.  The Court added, "We have recognized

'the value of waiver and forfeiture rules' in 'complex' cases, and

this case is no exception.'  If Pierce believed that the Bankruptcy

Court lacked the authority to decide his claim for defamation, he

should have said so — and said so promptly."  *Id.* at 2608 (internal

citations omitted).

The same is true here.  If Sharifeh believed that the

Bankruptcy Court lacked authority to decide her claims, she should

have raised the issue well prior to now.  *See In re Wilderness*

*Crossing*, No. 09-14547, 2011 WL 5417098, at *1 (Bankr. W.D. Mich.

Nov. 8, 2011)(holding that parties may waive *Stern*-based

objections).  It is far too late now, and smacks of a delay tactic

in litigation that dragged on for too long.  *See In re Mandalay*

*Shores Co-op. Housing Ass'n Inc.*, 58 B.R. 586, 587 (N.D. Ill. 1986)

("Although the Bankruptcy Code does not specify when a motion to

withdraw reference must be filed, common sense dictates that it

must precede dismissal of the bankruptcy proceedings.").

None of these conclusions is upended by the late-arising cases

cited in Sharifeh's reply.  *See In re Ortiz*, --- F.3d ---, 2011 WL

6880651, at *7 (7th Cir. Dec. 30, 2011)(noting "This case does not

present any question about a bankruptcy judge's authority to enter a final judgment when the parties have consented."); *see also In re Republic Windows & Doors, LLC v. Levey*, No. 08-34112, 2011 WL 6157342 (Bankr. N.D. Ill. Dec. 12, 2011)(concluding that "Contrary to the Defendant's broad reading of *Stern*, that decision does not implicate subject matter jurisdiction.")

But Sharifeh further contends in her reply that her jurisdictional waiver was not truly voluntary; that she tried to have the matter adjudicated in Cook County Chancery Court. Sharifeh abandoned that effort after the bankruptcy judge, Judge Cox, upon hearing of the Chancery Court action, called it an effort to "spirit away assets" and announced she would ask the U.S. Attorney's Office to investigate. Sharifeh's abandonment of the state court case was done solely "out of fear that her actions . . . would result in criminal charges being brought against her." Pet'r's Reply 5.

While that might plausibly demonstrate why Sharifeh moved her efforts to bankruptcy court, it does not explain why she never contested the bankruptcy court's jurisdiction once she got there. Her vigorous efforts there belie any claim of timidity toward the bankruptcy judge. Sharifeh herself admits that, even after the judge's comments, Sharifeh filed an adversary complaint, a motion to intervene and a motion to vacate an order of that same bankruptcy judge. *Id*. She also filed a motion asking Judge Cox to

recuse herself over the comment, and then an appeal when that motion was denied. *See In re: Richard Sharif*, No. 11-438, (N.D. Ill. March 3, 2011)(denying recusal appeal and finding nothing improper about Judge Cox's comments).

Simply put, a litigant unafraid to ask a judge to recuse herself would not be afraid to file a motion contesting that court's jurisdiction. The Court finds that waiver, not fear, was behind Sharifeh's failure to raise this issue before now.

For these reasons, Sharifeh's Motion to Withdraw Reference is denied.

### III. <u>SHARIF APPEAL</u>

#### A. Standard of Review

The Court reviews the Bankruptcy Court's entry of sanctions for abuse of discretion, and its findings of fact for clear error. *In re Thomas Consol. Indust., Inc.*, 456 F.3d 719, 724 (7th Cir. 2006).

Federal Rule of Civil Procedure 37 is applicable to adversary proceedings in bankruptcy through Rule 7037 of the Bankruptcy Rules. *Id.* at 724 n.4. Rule 37(a) allows courts to enter orders compelling parties to comply with discovery, and Rule 37(b) provides that a failure to obey such an order may justify certain sanctions, including a default judgment against the delinquent party. When imposing the sanction of a default judgment or dismissal of a case under Rule 37(b), the court must find that the

delinquent party displayed willfulness, bad faith, or fault. *Id.*
(citing *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003)).
Such a finding should be explicit, but may be implied from the
sanction order. *Id.* (citing *Golant v. Levy*, 239 F.3d 931, 937 (7th
Cir. 2001)).

## B. Analysis

As a preliminary matter, much of the evidence that Sharif
points to here about the Soad Wattar Trust comes not from evidence
presented at the hearing on the motion for sanctions, but from a
Motion for Summary Judgment on Wellness' adversary complaint
submitted to the Bankruptcy Court on June 22, 2010. The motion was
denied as moot due to the court's ruling on Wellness' motion for
sanctions. Wellness asks this Court not to consider the
information in the summary judgment motion, given that it was not
presented to the Bankruptcy Court as part of its consideration of
the discovery dispute. Ultimately it does not matter. Even
considering the contents of the motion, Sharif cannot prevail
because the Court will not attach to it the significance that
Sharif would like.

When considering the appropriateness of sanctions, this Court
is to "look at the entire procedural history of the case." *Rice v.
City of Chi.*, 333 F.3d 780, 784 (7th Cir. 2003)(internal citations
omitted). Among the factors to consider are the frequency and
magnitude of the non-compliance, the party's failure to comply with

court deadlines, the effect of these failures on the court's time and schedule, prejudice to other litigations, and the possible merits of the suit. *Id.* (citing *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)).

The summary judgment motion contends that Sharif and Sharifeh had produced documents or sworn testimony to show that he never had an interest in the Loan Application assets, and that the Soad Wattar Trust was funded with money Wattar received as a result of her husband's death. Sharifeh, according to the motion, became the successor beneficiary of the Soad Wattar Trust on October 8, 2007. Sharif contended that he never received funds from the Soad Wattar Trust, nor received any compensation for acting as its trustee. He claims he lied on the Washington Mutual loan application in order to help his mother purchase a home.

The motion for summary judgment also includes a declaration from an accountant, Thomas Snaza ("Snaza"), who prepared the tax returns for both the trust and Sharif personally. Snaza declared that over the past six years, he had not discovered any transactions in which Sharif used the assets of the trust for his own benefit or any evidence that Sharif had received financial compensation for acting as trustee of the trust. Upon Soad Wattar's death, according to the summary judgment motion, Sharifeh became the successor beneficiary to the trust. She also claims that she became the successor trustee, replacing Sharif.

Sharif argues that the summary judgment motion, and its accompanying affidavits, are important to show that the merits of Wellness' claim were weak. However, the Court notes that Wellness did not have an opportunity to respond to the motion or challenge the evidence brought forward. Sharif cannot reasonably expect this Court to accept his version of events, particularly as to the ownership of the Soad Wattar Trust, when he was defaulted for failing to provide discovery on this very matter.

Nor do the contents of the motion show that Sharif substantially complied with his discovery obligations, much less by the date ordered by the Bankruptcy Court, which was April 28, 2010, nearly two months prior to the filing of the motion for summary judgment on June 22, 2010. So it does not provide a basis for reversing the Bankruptcy Court's rulings.

### 1. *Whether Sharif was Denied Due Process*

Sharif argues that the failure of Wellness' attorneys to consult with his lawyer before supplementing its motion to compel amounted to a violation of his due process rights because he was not on notice of what he had to do to avoid the sanction of default. Presumably, Sharif means that the Bankruptcy Court, and not Wellness, violated his right to due process when it granted the motion to compel although the parties had not conferred after Wellness supplemented its motion. It is true that the imposition of sanctions under Rule 37 must follow notice and the opportunity

to respond.  *See Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1997).  Here, however, Sharif received both.

Contrary to Sharif's argument that he had no notice that the Bankruptcy Court might impose drastic sanctions, the Court explicitly informed him in its April 21, 2010, order that "in the event Richard Sharif fails to comply by April 28, 2010, an order of default will be entered against him in the proceeding."  Further, the Bankruptcy Court held a lengthy hearing on May 24, 2010, on the alleged violations, which Sharif did not attend.  At that hearing, counsel for Sharif was given an opportunity to explain his failure to comply with his discovery obligations.  To the extent he argues that Rule 37 required more of the Bankruptcy Court or Wellness, Sharif is mistaken.

Rule 37(a) requires a party to certify that it has in good faith conferred or attempted to confer with the party failing to provide discovery before filing a motion to compel.  However, there is no dispute that Wellness' counsel conferred with Sharif's prior to filing the motion to compel.  Sharif cites no authority for the proposition that Wellness had a duty to again confer before supplementing its motion.  Additionally, Wellness supplemented its motion with testimony from Sharif's deposition, which he and his counsel attended.  So Wellness' complaints cannot have come as a surprise to Sharif.

The Bankruptcy Court specifically addressed this issue and found that an additional certification was not required. This Court concurs. In particular, the Bankruptcy Court noted, "[A] phone call would have been futile because the Debtor was so grossly out of compliance with his discovery obligations." This is especially true given the history of this dispute, dating back to the Texas litigation. Sharif has shown, time and time again, an unwillingness to turn over information that would allow Wellness to collect its judgment against him. There is no reason to think an additional phone call from Wellness' counsel would have solved the problem.

### 2. *Whether the Bankruptcy Court Abused its Discretion*

Sharif points to several supposed flaws with the Bankruptcy Court's order, none of which justify reversal. First, he contends that the Bankruptcy Court did not provide any insight into the deficiencies in Sharif's discovery responses.

This is not so. As detailed above, the 18-page order outlines numerous deficiencies in some detail. Nor can the Court accept Sharif's argument that he made a good-faith effort to comply with discovery. It is true that Sharif delivered some 1,500 pages of documents to counsel for Wellness prior to the deposition. Yet it is clear, based on Sharif's own deposition, that he failed to turn over numerous categories of documents.

A few examples will suffice.  Sharif admitted that he had not provided any documents evidencing the source and funding of the Soad Wattar Trust.  Sharif Dep. at 109:11-110:24.  Sharif admitted that he did not provide the source data and documents used to complete his tax returns.  *Id.* at 133:24-136:2.  He admitted that he did not provide signed copies of his tax returns.  *Id.* at 130:2-131:6.  He admitted to not having provided information about various accounts, including the Soad Wattar Living Trust Account at Banco Popular.  *Id.* at 107:5-108:1.

Additionally, although Sharif produced documents following the deposition, apparently including bank statements relating to the Soad Wattar Trust and Sharif's personal accounts, it is not clear (and Sharif has made no effort to make it clear) exactly what was produced, much less whether this brought Sharif anywhere near compliance with the discovery requests.  As such, despite Sharif's arguments, the Court cannot find that he substantially complied with the discovery requests.

Nor did the Bankruptcy Court err in finding that Sharif acted willfully and in bad faith.  While the court did not expressly use these terms that is the clear implication of its findings that Sharif had not made a serious effort to comply with the discovery requests, either before or after his mother's death, that he was grossly out of compliance with his obligations, and that his lack of compliance was part of a pattern that had continued from the

time of the Texas litigation.  *See Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998)(holding that in imposing sanctions court may consider a party's actions in a related case).

Finally, Sharif argues that the Bankruptcy Court abused its discretion in seizing the Soad Wattar trust and turning it over to the bankruptcy trustee to pay his debts.  In so arguing, he insists that the Soad Wattar Trust is a real trust, with a real beneficiary -- his sister, Sharifeh.  Even if this is true, however, the Court notes that Sharifeh brought her own appeal to the Bankruptcy Court's order dismissing her adversary proceeding in which she sought to be pronounced the rightful owner of the assets in the Soad Wattar Trust.  That case is pending before Judge Grady, and this Court will not comment on its merits.

## IV.  <u>SHARIF MOTION TO SUPPLEMENT BRIEFING SCHEDULE</u>

Lastly, Sharif moved on January 12, 2012 to file supplemental briefings in the 10 C 5303 appeal based on the Seventh Circuit's December 30, 2011 ruling in *In Re Ortiz*. --- F.3d ---, 2011 WL 6880651 (7th Cir.).  Sharif seeks to argue, as his sister did, that the bankruptcy court was without jurisdiction.  Sharif pegs his motion to the *recent Ortiz* ruling, but the issue dealt with stems from *Stern v. Marshall (See Infra* II. B., discussing *Stern* and *Ortiz)*.  *Stern* was decided by the United States Supreme Court on June 23, 2011, a month and a half before Sharif filed his appellate brief on August 9, 2011 in this case.  Sharif now seeks to raise

this issue, for the first time, six months after *Stern.* The court finds this motion untimely, and therefore denies it.

## V. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1.     Ragda Sharifeh's Motion to Withdraw Reference, brought in Case No. 11 C 8811 is denied.

2.     Richard Sharif's Motion to Set Supplemental Briefing Schedule, brought in Case No. 10 C 5303 is denied.

3.     The rulings of the Bankruptcy Court in the appeals in Case Nos. 10 C 5303, 10 C 5333, 10 C 6057, and 11 C 175 are affirmed in their entirety.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 2/10/2012